UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ISIAH WILLIAMS,

Plaintiff,

v.

JAMES B. RITTS,
TODD BAXTER,
MARK E. MONAGHAN,
PATRICK PHELAN,
DANIEL LUFFMAN,
SCOTT PETERS,
JEFFREY HOFFMAN,[1] and
INVESTIGATOR SHAFFER,

Defendants.

---

**REPORT**
**and**
**RECOMMENDATION**
----------------------------
**DECISION**
**and**
**ORDER**

**22-CV-254-JLS(LGF)**

APPEARANCES:

ISIAH WILLIAMS, *Pro se*
09B1486
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411-9199

GALLO & IACOVANGELO
Attorneys for Defendant Phelan
CRAIG D. CHARTIER, of Counsel
180 Canal View Blvd.
Suite 100
Rochester, New York 14623

MATTHEW SCHWARTZ
MONROE COUNTY ATTORNEY
Monroe County Department of Law
Attorney for Defendant Peters
JULIA ROSE MERANTE
Assistant County Attorney, of Counsel
39 West Main Street
Room 307
Rochester, New York 14614

---

[1] Defendant Jeffrery Hoffman's name is incorrectly spelled in the Amended Complaint as "J.R. Huffman."

HOLLY A. ADAMS
ONTARIO COUNTY ATTORNEY
Ontario County Attorney's Office
Attorney for Defendants Hoffman and Shaffer
JOSEPH S. NACCA
Assistant County Attorney, of Counsel
20 Ontario Street
Third Floor
Canandaigua, New York 14424

## JURISDICTION

This case was referred to the undersigned by Honorable John L. Sinatra, Jr. on April 9, 2025, for all pretrial matters including preparation of a report and recommendation on dispositive motions. (Dkt. 21). The matter is presently before the court on motions to dismiss filed by Defendants Hoffman and Shaffer on April 10, 2025 (Dkt. 23), Peters on April 18, 2025 (Dkt. 28), and Phelan on June 9, 2025 (Dkt. 40), and on a motion filed by Plaintiff on July 8, 2025 (Dkt. 50), for an order revising various filing deadlines.[2]

## BACKGROUND

Plaintiff Isiah Williams ("Plaintiff"), proceeding *pro se*, commenced this action on March 29, 2022, seeking relief pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights based on his arrest, prosecution, and convictions in Ontario County, New York, which were subsequently reversed and dismissed. Complaint (Dkt. 1).[3]

[2] Although Defendants' motions seeking dismissal of the Amended Complaint for failure to state a claim for which relief can be granted are dispositive, while Plaintiff's motion seeking an order revising filing deadlines is non-dispositive, all pending motions are addressed in this combined Report and Recommendation and Decision and Order in the interests of completeness and judicial economy.

[3] Attached to the original Complaint are numerous exhibits filed as part of Dkt. 1, as well as Dkts. 1-1 through 1-3.

Defendants to this action include Monroe County Sheriff's Office Investigator Scott Peters ("Peters"), Monroe County Sheriff's Office Sergeant Patrick Phelan ("Phelan"), Ontario County Sheriff's Office Investigator Gregory Shaffer ("Shaffer"), and Ontario County Sheriff Deputy Jeffrey Hoffman ("Hoffman") (together, "Defendants"). Also on March 29, 2022, Plaintiff moved for leave to proceed *in forma pauperis* ("IFP") (Dkt. 2) ("motion for IFP status"). In an Order filed September 26, 2022 (Dkt. 5) ("Sept. 22, 2026 Order"), District Judge John L. Sinatra, Jr. denied Plaintiff's motion for IFP status because Plaintiff has previously accumulated three so-called "strikes" under 28 U.S.C. § 1915(g), and has not alleged that he is in "imminent danger of serious physical injury." Sept. 22, 2022 Order at 8. On October 19, 2022, Plaintiff moved for leave to amend the Complaint to allege he was in "imminent danger of serious physical injury" and for reconsideration of the September 22, 2022 Order denying his motion for IFP status, (Dkt. 6) ("motion to amend"), attaching a proposed amended complaint (Dkt. 6-1) ("PAC"). In an Order filed December 12, 2022 (Dkt. 8) (December 12, 2022 Order"), Judge Sinatra grants Plaintiff's motion to amend but found the PAC failed to establish Plaintiff was in imminent danger of serious physical injury such that Plaintiff could not proceed IFP in this action, December 12, 2022 Order at 10, and denied Plaintiff's request for reconsideration of the September 22, 2022 Order denying Plaintiff's motion for IFP status. *Id*. at 11. Plaintiff was directed to pay the filing fee or the action would be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g). On December 12, 2022, Plaintiff filed the amended complaint (Dkt. 9) ("Amended Complaint"), and on January 3, 2023, Plaintiff paid the filing fee.

On April 1, 2024, Judge Sinatra screened the Amended Complaint pursuant to 28 U.S.C. § 1915(a) (Dkt. 11) ("Screening Order"), and determined the Amended Complaint asserted claims for false arrest, malicious prosecution, and denial of a fair trial, Screening Order at 16, and that each claim is predicated on Plaintiff's assertion that Defendant Phelan manufactured evidence by creating copies of forged checks which were presented to the grand jury to obtain indictments against Plaintiff. *Id*. at 20.[4] Judge Sinatra dismissed all claims against James R. Ritts, Mark E. Monaghan, and Todd Baxter, but permitted the claims for malicious prosecution and denial of a fair trial to continue against Defendant Patrick Phelan ("Phelan"), and the failure to intervene claim against Defendants Scott Peters ("Peters"), and Investigator Shaffer ("Shaffer"). Screening Order at 34. Judge Sinatra also found the false arrest claims Plaintiff asserted against Defendants Phelan and Defendant J.R. Hoffman were time-barred and, thus, subject to dismissal unless Plaintiff showed cause in writing and within 35 days, why the false arrest claims were entitled to either statutory or equitable tolling. *Id*.

In a letter to Judge Sinatra dated April 4, 2024, and filed April 10, 2024 (Dkt. 12) ("April 4, 2024 Letter"), Plaintiff provided additional allegations as to why his false arrest claims were equitably tolled and did not accrue until his termination of his criminal proceeding and thus are not time-barred. April 4, 2024 Letter at 2-5. In an Order filed February 21, 2025 (Dkt. 15) ("February 21, 2025 Order"), Judge Sinatra found Plaintiff raised plausible arguments regarding the timeliness of the false arrest claims which required further development by the parties. February 21, 2025 Order at 6. On March

[4] In the Screening Order, Judge Sinatra described the Amended Complaint as "lengthy, repetitive, and confusing . . . ." Screening Order at 5.

13, 2025, summonses were issued as to Defendants Hoffman, Peters, Phelan and Shaffer. (Dkt. 16).

On April 10, 2025, Defendants Hoffman and Shaffer ("Ontario County Defendants") filed a motion to dismiss the Amended Complaint (Dkt. 23) ("Ontario County Defendants' Motion"), attaching the Attorney Declaration of [Assistant Ontario County Attorney][5] Joseph S. Nacca in Support of Motion to Dismiss (Dkt. 23-1) ("Nacca Declaration"), exhibits 1 through 3 (Dkts. 23-2 through 23-4) ("Ontario County Defendants' Exh(s). __"), and the Memorandum of Law in Support of Motion to Dismiss (Dkt. 23-5) ("Ontario County Defendants' Memorandum"). Ontario County Defendants also filed on April 10, 2025, a Suggestion of Death Upon the Record Under Rule 25(a)(1) on behalf of Shaffer. (Dkt. 24) ("Suggestion of Shaffer's Death").

On April 18, 2025, Defendant Peters filed a motion to dismiss the Amended Complaint (Dkt. 28) ("Peters's Motion"), attaching the Attorney Declaration [of Assistant Monroe County Attorney] Maria E. Rodi (Dkt. 28-1) ("Rodi Declaration"), a copy of the Amended Complaint (Dkt. 28-2), a volume of unpublished decisions (Dkt. 28-3), and Defendant Scott Peters' [*sic*] Memorandum of Law in Support of Motion to Dismiss (Dkt. 28-4) ("Peters's Memorandum"). In response to Ontario County Defendants' Motion, on May 27, 2025, Plaintiff filed an Affidavit (Dkt. 37) ("Plaintiff's First Affidavit"), the "Reply" Memorandum of Law (Dkt. 38) ("Response to Ontario County Defendants' Motion"), and an appendix of exhibits 1 through 13 (Dkt. 39) ("Plaintiff's First Appendix Exh(s). __").

On June 9, 2025, Defendant Phelan filed a motion to dismiss the Amended Complaint for failure to state a claim (Dkt. 40) ("Phelan's Motion"), attaching the

[5] Unless otherwise indicated, bracketed material has been added.

Declaration [of Craig D. Chartier, Esq.] in Support of Motion to Dismiss (Dkt. 40-1) ("Phelan's Memorandum"), a copy of the Amended Complaint (Dkt. 40-2), and the Memorandum of Law in Support of Motion to Dismiss (Dkt. 40-3) ("Phelan's Memorandum"). In response to Peters's Motion, on June 16, 2025, Plaintiff filed the Rebuttal Memorandum of Law (Dkt. 43) ("Response to Peters's Motion"), attaching the same appendix of exhibits 1 through 13 as submitted in connection with Plaintiff's Response to Ontario County Defendants' Motion (Dkt. 43 at 31-213) ("Plaintiff's Second Appendix Exh(s). __"). On June 24, 2025, Plaintiff filed in response to Phelan's Motion a Memorandum of Law (Dkt. 45) ("Response to Phelan's Motion"), attaching an appendix of exhibits 1 through 15 (Dkt. 45 at 33-241) ("Plaintiff's Third Appendix Exh(s). __").

On July 8, 2025, Ontario County Defendants filed the Reply Memorandum of Law in Further Support of Motion to Dismiss (Dkt. 49) ("Ontario County Defendants' Reply"), attaching the Attorney Declaration of [Assistant Ontario County Attorney] Joseph S. Nacca in Further Support of Motion to Dismiss (Dkt. 49-1) ("Nacca Reply Declaration"), and an exhibit of unreported cases (Dkt. 49-1). On July 8, 2025, Plaintiff moved for an order revising various filing deadlines as unnecessary given all anticipated papers from both Plaintiff and Defendants had passed (Dkt. 50) ("Plaintiff's Motion"). On July 9, 2025, Peters filed the Reply Memorandum of Law in Support of Defendant Scott Peters' [*sic*] Motion to Dismiss (Dkt. 51) ("Peters's Reply").

On July 16, 2025, Plaintiff filed the Memorandum of Law Petitioner's [*sic*] Sur-Reply (Dkt. 52), asserting arguments in further response to Defendants' motions seeking to dismiss the Amended Complaint (Dkt. 52) ("Plaintiff's First Sur-Reply"). By

letter to the undersigned filed July 17, 2025 (Dkt. 53) ("July 17, 2025 Letter"), Assistant Orleans County Attorney Nacca requested to court disregard Plaintiff's Sur-Reply because it was filed without leave of the court. Similarly, by letter to the undersigned filed July 18, 2025, (Dkt. 54) ("July 18, 2025 Letter") Defendant Peters requested the court disregard Plaintiff's Sur-Reply filed without leave of the court. On July 23, 2025, Plaintiff filed a Sur-Reply Memorandum of Law (Dkt. 55) ("Plaintiff's Second Sur-Reply"), asserting Plaintiff was also seeking the court's leave to file said document. By letter to the undersigned file July 24, 2025 (Dkt. 56) ("July 24, 2025 Letter"), Defendant Peters requested the court disregard Plaintiff's Second Sur-Reply for being filed without leave of court. By letter to the undersigned filed July 25, 2025 (Dkt. 57) ("July 25, 2025 Letter"), Plaintiff advises that he previously sought permission to file a sur-reply. On August 1, 2025 (Dkt. 58) ("August 1, 2025 Letter"), Plaintiff argues all claims set forth in the July 17, 2025 Letter, the July 18, 2025 Letter, and July 24, 2025 Letter must be denied. Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DISMISSED as moot; Ontario County Defendants' Motion should be GRANTED; Defendant Peters's Motion should be GRANTED; Defendant Phelan's Motion should be GRANTED.

## **FACTS**[6]

Between 2006 and 2007, Plaintiff Isiah Williams ("Plaintiff" or "Williams" or "Ike") was involved in a forged check cashing scheme ("forged check cashing scheme") in

[6] Taken from the pleadings and motion papers filed in this action.

both Monroe and Ontario Counties in New York.[7] On May 8, 2008, Plaintiff was arrested in Monroe County on a felony complaint charging Plaintiff with, as relevant here, multiple counts of scheme to defraud in the first degree, N.Y. Penal Law § 190.65, and grand larceny in the third degree, N.Y. Penal Law § 155.35 ("Monroe County charges").

On May 15, 2008, a Grand Jury convened in Ontario County Court ("Ontario County Grand Jury" or "Grand Jury") returned an indictment ("the indictment") charging Plaintiff with three counts of criminal possession of a forged instrument in the second degree, N.Y. Penal Law § 170.25 (respectively, "Count 1," "Count 2," and "Count 3"), and one count of grand larceny in the third degree ("Count 4"). N.Y. Penal Law § 155.35 ("Ontario County charges"). Dkt. 1 at 35. The Ontario County charges relate to the cashing in December 2006 of three forged checks, numbered 61512 ("check # 61512") (Count 1), 61517 ("check # 61517") (Count 2), and 61519 ("check # 61519") (Count 3) ("the forged checks"),[8] at Five Star Bank. Count 4 pertains to the cashing of check # 61517 for $ 3,245.55, *i.e.*, an amount exceeding the $ 3,000 threshold for larceny in the third degree, N.Y. Penal Law § 155.35[1]. The forged checks relevant to this action were drawn on an M&T Bank account in the name of County of Monroe, Office of the Sheriff, Inmate Fund Account,[9] and made payable to one George Scott

---

[7] Information regarding the investigation of the forged check cashing scheme is taken from the Accusatory Instrument Felony Complaint pertaining to the investigation of the forged check cashing scheme in Monroe County ("Monroe County felony complaint"), filed as Exhibit F to the original Complaint, Dkt. 1-3 at 2-21. No copy of an accusatory instrument from Ontario County is in the record.

[8] Copies of the forged checks are attached as exhibits to the original Complaint (Dkt. 1 at 36-38).

[9] Defendant Phelan explains that when someone provides an inmate held at the Monroe County Jail with money for the inmate's commissary purchases, the money is held in a commissary account for that inmate. Dkt. 1-2 at 84-85. Upon the inmate's release from the Monroe County Jail, the County issues the inmate refunds of any money remaining in the inmate's commissary account by issuing a check to the

("Scott"). According to Scott, Plaintiff created the forged checks on a computer at the home of his nephew, one Sherrell Williams ("Sherrell Williams" or "Styles"), located at 119 Weldon Street in Rochester, New York. Dkt. 1-3 at 76 (Statement of Fact/Supporting Deposition of Scott dated January 16, 2007) ("Scott's Statement"). The notation written in the memo line of each of the forged checks indicates the payment is for "Inmate Release." Dkt. 1 at 36-38. The forged checks contained an image of a signature of an authorized signatory for the account on which the forged checks were drawn. *Id*. Plaintiff and Sherrell Williams drove Scott to various banks in Rochester, New York, and Geneva, New York to cash the forged checks. *Id*. When Scott went into the banks to cash the forged checks, Plaintiff and Sherrell Williams waited outside in the vehicle. *Id*. Scott cashed two of the forged checks, check # 61512 in the amount of $ 925.65, and check # 61517 in the amount of $ 3,245.55, at the Five Star Bank in Geneva, New York, and the third forged check, check # 61519 in the amount of $ 971.21, at a Five Star Bank in Victor, New York, with a portion of the cashed funds from each of the forged checks deposited into a checking account in Scott's name, and the remainder received in cash by Scott who then provided the cash to Plaintiff who then paid Scott his share from the cash.[10]

On January 16, 2007, Scott was arrested at an M&T Bank in Webster, New York as he attempted to cash other forged checks. In Scott's Statement given by Scott following his arrest on January 16, 2007 (Dkt. 1-3 at 76-77), and the Monroe County

inmate from the Inmate Fund Account. *Id*. The amount issued as a refund is usually between $ 10 and $ 20. *Id*.

[10] This scheme in which a forged check is presented to a bank for a portion of the check to be deposited into a checking account at the bank, with the balance of the check paid to the customer in cash is referred to as a "split deposit."

Incident Report pertaining to Scott's arrest (Dkt. 1-3 at 62-63) ("Monroe County Incident Report"), Scott explains that in December 2006, he was introduced to Plaintiff and Sherrell Williams who involved Plaintiff in a forged check cashing scheme. According to Scott, Plaintiff and Sherrell Williams drove Scott to various banks in Rochester and Geneva and waited in the vehicle while Scott went into the banks and presented the forged checks to cash. Scott then returned to the waiting vehicle and gave the money from the cashed forged checks to Plaintiff and Sherrell Williams who allowed Scott to keep some of the money. Sometimes the three stopped at a house at 119 Weldon Street, Rochester, New York where Sherrell Williams lived, the third floor or attic of which was referred to as the "lab" and Scott waited with Plaintiff while Sherrell Williams went into the lab to get more forged checks or to make corrections to the checks. After a few weeks, Scott was invited into the lab where he observed Sherrell Williams using a computer to generate forged checks while Plaintiff looked over Sherrell Williams's shoulder. On January 12, 2007, Scott met up with Plaintiff and Sherrell Williams at Sherrell's house and waited while Plaintiff and Sherrell Williams created forged checks in the house. Plaintiff and Sherrell Williams then drove Scott to a couple of banks where Scott attempted to cash the forged checks but was unsuccessful. The following day, Scott went to Rochester where he met Plaintiff and Sherrell Williams who drove Scott to banks to cash checks but Scott again was unable to cash any of the checks. On Wednesday, January 16, 2007, Sherrell Williams picked up Scott and Plaintiff and drove to a Chase bank where Scott was unable to cash forged checks, and then drove to an M&T Bank in Webster, New York. Upon presenting a forged check to the bank teller at the M&T Bank, Scott was arrested. While Scott was delayed by the police at

the M&T Bank, Plaintiff and Sherrell Williams drove away. Dkt. 1-3 at 77. Based on Scott's statements, a search warrant was obtained for 119 Weldon Street in Rochester, which was executed on January 17, 2007. Dkt. 1-3 at 6, 63. An image of an authorized signature for one of the checks Scott cashed was found on a computer seized during the search of 119 Weldon Street. *Id*.

A supporting deposition by Five Star Bank employee, one Stephen Tarbell ("Tarbell"), lists five checks for which Scott made split deposits at various Five Star Bank branches including, *inter alia*, check # 61517 which Scott presented to a Five Star Bank in Geneva, in Ontario County, New York, depositing $ 700 and receiving cash back in the amount of $ 2,545.55. Dkt. 1-3 at 89. A Monroe County Sheriff's Office Property Custody Report show the forged checks, as well as others, were held at Five Star Bank in Warsaw, New York (Wyoming County). Dkt. 1-2 at 91.

On May 15, 2008, Ontario County Judge Craig J. Doran ("Judge Doran"), based on the indictment, issued a warrant for Plaintiff's arrest on the Ontario County charges ("the arrest warrant"), Dkt. 1 at 35,[11] and on May 28, 2008, while Plaintiff was out on bail on the Monroe County Charges, Plaintiff was arrested on the arrest warrant by Defendant Ontario County Sheriff Investigator Jeffrey Hoffman ("Hoffman") in Monroe County, New York. Dkt. 45 at 35. Plaintiff was tried on the indictment in Ontario County Court before a jury which, on May 1, 2009, convicted Plaintiff of criminal possession of a forged instrument in the second degree on Count 2 relative to check # 61517 (the M&T Bank check cashed by Scott at the Five Star Bank in Geneva, New York), and Count 4, grand larceny in the fourth degree based on the amount of check # 61517 ("first

[11] No copy of the arrest warrant in the record.

conviction"), but was acquitted on Counts 1 and 3.[12] On December 28, 2012, the New York Supreme Court, Appellate Division, Fourth Department, reversed Plaintiff's first conviction as to Count 2 because the jury sheet contained an improper notation, and defense counsel's summation at trial was improperly limited. *People v. Williams*, 957 N.Y.S.2d 783, 784-85 (4th Dep't 2012), *lv. to appeal denied* 994 N.E.2d 399 (N.Y. 2013). The conviction on Count 4 was also reversed as a lesser included offense relative to Count 2. *Id*. at 785. A new trial was granted as to Count 2, but Count 4 was dismissed with leave to present any appropriate charges to another grand jury. *Id*. at 785.

On August 5, 2015, following retrial on Count 2 in Ontario County Court, Plaintiff was again convicted by a jury ("second conviction").[13] Upon appeal to New York Supreme Court, Appellate Division, Fourth Department, *People v. Williams*, 80 N.Y.S.3d 608 (4th Dept. 2018), the trial court was found to have improperly permitted the prosecution to introduce as "uncharged" or "criminal" conduct evidence concerning Plaintiff's possession of check # 61512 and check # 61519, and the second conviction was therefore reversed with another new trial granted. *Id*. at 609-10.

Following the reversal of the second conviction and before Plaintiff could be tried for a third time on Count 2 which was then the only remaining count of the Ontario County charges, Plaintiff, pursuant to N.Y. Crim. Proc. Law § 210.40 ("§ 210.40") moved in Ontario County Court to have the indictment dismissed in the interest of justice ("§ 210.40 motion").[14] On May 15, 2019, oral argument ("oral argument") on the § 240.10

---

[12] The record does not provide any explanations for these acquittals.

[13] Plaintiff was not retried on Count 4.

[14] Filed as Exhibit E to the original Complaint, Dkt. 1-1 at 75, and Dkt. 1-2 at 1-66.

motion was conducted in Ontario County Court before Ontario County Court Judge Kristina A. Karle ("Judge Karle"). Ontario County Court Tr.[15] At the conclusion of the oral argument, Judge Karle granted the motion to dismiss the indictment, stating the dismissal was in the interest of justice, but it was not a "finding that there was any misconduct by the police," and that the dismissal was not on the merits. Ontario County Court Tr. at 17.

Plaintiff's claims for false arrest, malicious prosecution, and denial of a fair trial based on fabricated evidence are based on the evidence presented both to the Ontario County Grand Jury that returned the indictment on which the arrest warrant issued and at trial on the Ontario County charges.[16] Amended Complaint at 7-9, 12-13, 19-20, 22-24. According to Plaintiff, the Ontario County charges are duplicative of the charges on which he was convicted in Monroe County. In particular, the criminal investigation into the forged check cashing scheme included, as relevant here, lifting fingerprints from the check # 61517 which matched an inked fingerprint card for Plaintiff created in connection with a previous arrest of Plaintiff in Monroe County. Dkt. 1-2 at 94-95. Plaintiff also maintains that Defendant Phelan lied to the Ontario County Grand Jury that evidence regarding the creation of the forged checks was retrieved from the hard drive of a computer located at 119 Weldon Street in Rochester, despite Phelan also presenting evidence in connection with prosecuting Plaintiff on the Monroe County charges that the forged checks were created using a computer hard drive seized in

[15] References to "Ontario County Court Tr." are to pages of the May 15, 2019 oral argument on the motion to dismiss the indictment, identical copies of which are filed as Plaintiff's First Appendix Exh. 12 (Dkt. 39 at 111-30); Plaintiff's Second Appendix Exh. 12 (Dkt. 43 at 179-97); and Plaintiff's Third Appendix Exh. 12 (Dkt. 45 at 142-61). In the interest of judicial economy, references to the Ontario County Court Tr. are to the CM/ECF supplied page numbers on the first copy filed, *i.e.*, Dkt. 39 at 111-30.

[16] No records from either of Plaintiff's trials on the Ontario County charges are in the record.

January 2007 from the home of one Tryn Parker ("Parker") located at 12 Arnett Blvd., in Rochester. Amended Complaint at 19-20. A search warrant for 12 Arnett Blvd. was executed on January 4, 2008, following which numerous items were seized including seven computers, four of which were laptops and three were desktop computers. Dkt. 1-3 at 13.

## DISCUSSION

### 1. Motion to Dismiss

A complaint must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (rejecting longstanding precedent of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). As such, the Supreme Court requires application of "a 'plausibility standard . . . .'" *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Twombly*, 550 U.S. at 570, and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). On a motion to dismiss under Rule 12(b)(6), the court looks to the four corners of the complaint and is required to accept the plaintiff's nonconclusory allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (court is required to liberally construe the complaint, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' *Id.* (quoting *Twombly*, 550 U.S. at 557)

"[A] Rule 12(b)(6) motion is addressed to the face of the pleading." *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985). "In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Here, Plaintiff attached to the original Complaint numerous exhibits numbering more than 200 pages.[17] *See* Complaint (Dkts. 1 through 1-3). Although Plaintiff did not attach the exhibits to the Amended Complaint, because Plaintiff references them in the Amended Complaint, the court may consider them in connection with the instant motions seeking dismissal of the Amended Complaint. See *DeFries v. Wells Fargo Bank, N.A.*, 2024 WL 1281552, at *1, n. 1 (D. Conn. Mar. 26, 2024) (noting that in deciding a Rule 12(b)(6) motion to dismiss, the court may consider "not only 'facts alleged in the complaint' but also 'documents

[17] Plaintiff submitted these same exhibits with his responses in opposition to Defendants' motions to dismiss. *See* Dkts. 39, 43, and 45.

attached to the complaint as exhibits'" as well as "documents 'incorporated by reference in the complaint,' and documents not incorporated by reference 'where the complaint relies heavily upon [their] terms and effect, thereby rendering the document[s] integral to the complaint'" (quoting *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010)), including "'exhibits and documentation attached to the original [and Amended] Complaint[s]' that are 'incorporated by reference' in the Second Amended Complaint." (quoting *Chase v. Toomey*, 2022 WL 844048, at *1 n.1 (N.D.N.Y. Mar. 22, 2022)).[18]

A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]." *Trustees of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). "While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). Applying the standard for a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) "is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *In re Amaranth Natural*

[18] The Ontario County Court Transcript of the hearing on Plaintiff's § 240.10 motion was not filed as an exhibit to either the original or Amended Complaint. Nevertheless, the court may consider it on the pending motions to dismiss both because Plaintiff relies on Judge Karlie's granting his § 240.10 motion and it is a matter of which judicial notice may be taken. *See* Federal Rules of Evidence 201(b) (judicial notice may be taken of fact "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned"); *see also Singh v. United States Department of Homeland Security*, 526 F.3d 72, 80 & n. 9 (2d Cir.2008) (taking judicial notice of trial court docket sheet and transcript of plea colloquy which were not subject to reasonable dispute as establishing the plaintiff had been criminally convicted), and *Karcz v. City of North Tonawanda*, 2023 WL 2744836, at *5 (W.D.N.Y. Mar. 7, 2023) ("Courts routinely take judicial notice of transcripts of related judicial proceeding, including criminal proceedings." (citing *Coggins v. County of Nassau*, 2008 WL 2522501, at *7 (E.D.N.Y. June 20, 2008), *aff'd*, 362 Fed.Appx. 224 (2010))), *report and recommendation adopted*, 2023 WL 2743917 (Mar. 31, 2023).

*Gas Commodities Litigation*, 730 F.3d 170, 80 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Further, claims lacking in any legal basis are not plausible. *Humaid v.* Garland, 714 F.Supp.3d 201, 207 (W.D.N.Y. 2024) ("Plaintiff's claim is conclusory and offers no legal basis to support a plausible constitutional claim." (citing cases). *See also Robinson v. Jim*, 2024 WL 4981721, at *2 (W.D.N.Y. Oct. 24, 2024) ("A legally deficient claim is not a plausible one.") (citing *New Majority Holdings, LLC v. Ghaida,* 2012 WL 4741950, at *5 (S.D.N.Y. Oct. 3, 2012) (denying plaintiff's motion to amend because "it is apparent that the proposed new claims are legally deficient – that is, they are not 'plausible' on their face." (citing *Iqbal*, 556 U.S. at 678))), *report and recommendation adopted*, 2024 WL 4979453 (W.D.N.Y. Dec. 3, 2024).

Additionally, although Judge Sinatra's screening decision allowed several of Plaintiff's claims to proceed against the four remaining Defendants, "[a] court's decision allowing some claims to go forward at the initial screening stage does not insulate those claims from later review on a motion to dismiss." *Hendrix v. Pactiv LLC*, 488 F. Supp. 3d 43, 50–51 (W.D.N.Y. 2020). "The court retains an inherent power to dismiss an action if it becomes apparent that the court lacks subject matter jurisdiction or that the action is meritless on its face." *Id*. at 51. Nor does "an initial screening decision permitting some claims to proceed . . . amount to a judicial imprimatur endorsing the validity of those claims." *Id*. (citing *Sawyer v. NYSDOCS*, 2015 WL 6641471, at *4 (W.D.N.Y. Oct. 28, 2015) ("dismissal of this claim is not barred by [its] earlier decisions" on initial screening), and *Wilson v. Medical Unit Officials*, No 10-CV-1438, 2011 WL 6780934, at n.2 (E.D.N.Y. Dec. 27, 2011) ("an initial screening does not preclude a later

dismissal of the complaint, in whole or part, under Federal Rule of Civil Procedure 12(b)(6)”)).

In the instant case, Plaintiff's claims are asserted pursuant to 42 U.S.C. § 1983 (“§ 1983”), which permits imposing civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States. *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983). Section 1983, however, “‘is not itself a source of substantive rights.’” *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Rather, § 1983 “merely provides ‘a method for vindicating federal rights elsewhere conferred’ . . . .” *Id.* To succeed on a § 1983 claim, a plaintiff must establish the challenged conduct “(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States.” *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997). Plaintiff’s claims include false arrest in violation of the Fourth Amendment asserted against Defendants Hoffman and Phelan, Amended Complaint at 6-7[19] (Hoffman), and 19 (Phelan), malicious prosecution in violation of the Fourth Amendment asserted against Defendant Phelan, *id*. at 20, denial of a fair trial in violation of the Fourteenth Amendment asserted against Defendant Phelan, *id*. at 19-20, and failure to intervene in the alleged false arrest and denial of a fair trial against Defendant Peters, *id*. at 22 (false arrest and denial of a fair trial), and in the malicious

[19] Because the allegations of the Amended Complaint are not set forth in separately enumerated paragraphs, references to the Amended Complaint are to the CM/ECF assigned page numbers.

prosecution against Defendants Peters and Shaffer, *id*. at 14 and 22 (Peters), and 23-24 (Shaffer).

**2. False Arrest**

Plaintiff asserts a claim for false arrest against Defendants Hoffman and Phelan. Both Defendants Hoffman and Phelan move to dismiss the false arrest claim as untimely filed and because Plaintiff's allegations that the evidence on which the indictment and arrest warrant were based are conclusory and implausible. Ontario County Defendants' Memorandum at 5-9; Phelan's Memorandum at 11-12. In opposition, Plaintiff argues that the limitations period for his false arrest claim was equitably tolled, Plaintiff's Response to Ontario County Defendants' Motion at 3-6; Plaintiff's Response to Phelan's Motion at 10-16, and that the exhibits on which Plaintiff relies establishes the plausibility of Plaintiff's challenges to the evidence on which the indictment and arrest warrant are based. Plaintiff's Response to Ontario County Defendants' Motion at 7-9; Plaintiff's Response to Phelan's Motion at 17-27. In reply, Hoffman relies on his earlier argument that the claim is time-barred. Ontario County Defendants' Response at 9. Phelan did not reply in further support of dismissal.[20]

[20] As stated, Background, *supra*, at 5, on April 10, 2025, Ontario County Defendants, pursuant to Fed.R.Civ.P. 25 ("Rule 25 __"), filed a Suggestion of Shaffer's Death on May 6, 2022. (Dkt. 24). Pursuant to Rule 25(a)(1), if a party dies and pending claims are not extinguished, the court may order a substitution of the proper party upon a motion "made by any party or by the decedent's successor or representative." Fed.R.Civ.P. 25(a)(1). If, however, no such motion is made within 90 days after service of a suggestion of death, then "the action by or against the decedent must be dismissed." *Id*. In the instant case, although more than 90 days have elapsed since Ontario County Defendants filed the Suggestion of Shaffer's Death, with no motion to substitute a proper party for Shaffer being made, the docket does not indicate that Ontario County Defendants ever served a copy of the Suggestion of Shaffer's Death on Plaintiff, who, as a *pro se* inmate plaintiff, does not receive notice of documents filed on the court's electronic filing system, *i.e.*, CM/ECF. Because Plaintiff did not receive notice of the Suggestion of Shaffer's Death, the 90-day period in which the parties were required to move to substitute a proper party for Shaffer has not been triggered. *See Kotler v. Jubert*, 986 F.3d 147, 153-56 (2d Cir. 2021) (service of a suggestion of death upon the parties triggers the 90-day period for motions to substitute under Rule 25(a)(1) (citing *Unicorn Takes v. Banerjee*, 138 F.3d 467, 469-70 (2d Cir. 1998))).

**A. Statute of Limitations**

"A § 1983 claim for false arrest 'rest[s] on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause.'" *Ghani v. Town of W. Seneca*, 2025 WL 2323381, at *11 (W.D.N.Y. Aug. 12, 2025) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). The statute of limitations for a false arrest claim pursuant to § 1983 arising in New York is three years. *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). Although the applicable statute of limitations for a § 1983 claim is based on state law, "the accrual date of a § 1983 cause of action is a question of federal law. . . ." *Wallace v. Kato*, 549 U.S. 384, 389 (2007) ("*Wallace*").

Before the Supreme Court in *Wallace* was whether the statute of limitations for a false arrest claim was tolled until and unless the plaintiff's criminal conviction was terminated in his favor in accordance with *Heck v. Humphrey*, 512 U.S. 477 (1994) ("*Heck*"). As relevant in *Heck*, the Court held that

> [W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

*Heck*, 512 U.S. at 487 (italics in original).

In *Wallace*, however, the Court rejected that false arrest claim does not accrue until after the conviction or sentence is invalidated; in other words, *Heck* does not apply to a § 1983 claim for false arrest which instead accrues with the unlawful detention of the plaintiff. *Wallace*, 549 U.S. at 389-90. As such, "[t]here can be no dispute that [the

plaintiff] could have filed suit as soon as the allegedly wrongful arrest occurred, subjecting him to the harm of involuntary detention, so the statute of limitations would normally commence to run from that date." *Id*. at 388. "Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." *Id*. at 389 (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 119, pp. 885–886 (5th ed.1984) (italics in original)). Accordingly, absent equitable tolling, the limitations period for Plaintiff's claims for false arrest runs from the date of Plaintiff's arrest on May 28, 2008.

Equitable tolling is a doctrine that permits courts to extend a statute of limitations on a case-by-case basis to prevent inequity. *See Warren v. Garvin,* 219 F.3d 111, 113 (2d Cir.2000); *Johnson v. Nyack Hosp.,* 86 F.3d 8, 12 (2d Cir.1996). The doctrine has been applied "as a matter of fairness" where a plaintiff has been "prevented in some extraordinary way from exercising his rights, or [has] asserted his rights in the wrong forum." *Johnson,* 86 F.3d at 12 (quoting *Miller v. Int'l Tel. & Tel. Corp.,* 755 F.2d 20, 24 (2d Cir.), *cert. denied,* 474 U.S. 851 (1985)). Equitable tolling will not apply, however, unless the party seeking to invoke the doctrine has acted with reasonable diligence throughout the period he seeks to have tolled. *Id.* A party seeking to invoke the doctrine of equitable tolling bears the burden of establishing: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005).

As relevant here, in an earlier § 1983 action commenced by Plaintiff on April 19, 2010, well within the relevant three year limitations period for his false arrest claim,

Plaintiff alleged false arrest claims based on his arrest pursuant to the warrant issued based on the indictment on the Ontario County charges against various Defendants including, relevant to the instant case, Phelan but not Hoffman. *See Williams v. Phelan*, 10-CV-6218-DGL(MWP). In an Decision and Order filed May 18, 2010, District Judge David G. Larimer dismissed the action pursuant to *Heck*, without prejudice, because Plaintiff's conviction on the Ontario County charges had not been invalidated or otherwise terminated in Plaintiff's favor. *Williams v. Phelan*, 10-CV-6218-DGL(MWP), slip. op. at 3-4 (W.D.N.Y. May 18, 2010). A few years earlier, however, the Supreme Court decided *Wallace* which, as discussed, Discussion *supra*, at 19-20, held that a claim for false arrest accrues when the plaintiff is allegedly falsely arrested and subjected to involuntary detention and thus is not subject to a stay until the criminal case is terminated in the plaintiff's favor as required by *Heck*. *Wallace*, 549 U.S. at 393-94. Accordingly, because the *Heck* bar does not apply to false arrest claims, Plaintiff, unlike his malicious prosecution claim, was not required to have his conviction overturned prior to commencing his earlier § 1983 action. Although Plaintiff's instant action was filed March 29, 2022, within three years of the May 15, 2019 dismissal of Plaintiff's Ontario County indictment in the interest of justice, because it was not filed within three years of Plaintiff's arrest on May 28, 2008, it is untimely unless equitable tolling applies.

Regardless of whether an erroneous decision by the court in the earlier action constitutes the requisite extraordinary circumstance for equitable tolling, *Pace,* 544 U.S. at 418, Plaintiff, rather than pursuing collateral attacks on his Ontario County conviction, could have appealed the dismissal of his earlier action by Judge Larimer to the Second

Circuit Court of Appeals, which, based on *Wallace*, presumably would have vacated the dismissal of Plaintiff's false arrest claim and permitted the matter to proceed, at least on the false arrest claim. That Plaintiff failed to do so demonstrates that Plaintiff did not diligently pursue his rights. *Id*.

Accordingly, Plaintiff fails to plausibly allege that his false arrest claim, which accrued upon his arrest on May 28, 2008, is subject to equitable tolling because of an incorrect decision in his earlier action which was dismissed based on *Heck* which, according to *Wallace*, did not apply to Plaintiff's false arrest claim. Alternatively, Plaintiff's false arrest claim is subject to dismissal for failure to plausibly allege such claim.

**B. Plausibility of False Arrest Claim**

As stated, the indictment on which the arrest warrant issued charged Plaintiff with three counts of criminal possession of a forged instrument in the second degree in violation of N.Y. Penal Law § 170.25, and a single count of grand larceny in the fourth degree in violation of N.Y. Penal Law § 155.30[1]. Plaintiff's allegations that Phelan fabricated evidence presented to the Ontario County Grand Jury thereby rebutting the presumption of probable cause for the indictment and the arrest warrant are implausible. In particular, Plaintiff's allegations, Amended Complaint at 19-20, that the copies of the forged checks presented to the Ontario County Grand Jury did not contain Plaintiff's fingerprints and that the forensic evidence derived from the seized hard drives show check # 61517 was created at 12 Arnett Drive rather than at 119 Weldon Street are irrelevant to the three counts of criminal possession of a forged instrument in the second degree, N.Y. Penal Law § 170.25 with which Plaintiff was charged.

Plaintiff's "§ 1983 claim for false arrest derives from his Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (citing *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996)). "The Second Circuit generally look[s] to the law of the state in which the arrest occurred." *Jaegly,* 439 F.3d at 151 (internal quotation marks omitted; brackets in *Jaegly*).

The elements for "false arrest and false imprisonment are one and the same" under New York common law. *Hershey v. Goldstein,* 938 F.Supp.2d 491, 515 (S.D.N.Y.2013); *see also Holland v. City of Poughkeepsie,* 935 N.Y.S.2d 583, 589 (2d Dep't 2011) (false arrest and false imprisonment "are two names for the same tort"). To prevail on a false arrest claim, Plaintiff must establish that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir.1994). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under § 1983." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996) (citation omitted). "[P]robable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.* "[I]f there is no dispute as to the pertinent events and the knowledge of the officers," the existence of probable cause may be determined as a matter of law. *Id*. Significantly, the arrest is valid "so long as the arrest itself was supported by probable cause,

regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 n. 1, 154 (2d Cir. 2006) ("when faced with a claim for false arrest, we focus on the validity of the *arrest,* and not on the validity of each charge") (citing *Devenpeck v. Alford,* 543 U.S. 146 (2004)). Thus, although Plaintiff was arrested on four specific charges, probable cause for only one is necessary to avoid a Fourth Amendment violation. *Id*.

Here, Plaintiff's false arrest claim is predicated on his assertion that the indictment and the arrest warrant are based on fabricated evidence that Defendant Phelan presented to the Grand Jury and which conflicts with Scott's Statement. In particular, Plaintiff alleges that Defendant Phelan, in concert with Monroe County Assistant District Attorney Mark E. Monaghan ("Monaghan"),[21] fabricated Plaintiff's fingerprint on copies of the forged checks that were presented to the Ontario County Grand Jury. Amended Complaint at 19. Plaintiff further maintains that Phelan "fabricated and manufactured evidence from the harddrive [*sic*] of Tryn Parker to the [Grand J]ury that the Monroe County Sheriff's Inmate Refund checks were produced on the harddrive [sic] of Sherrell Williams at 119 Weldon Ave.," Amended Complaint at 20, which is inconsistent with Scott's statement. *Id*. Plaintiff's allegations, even if true, fail to lend plausibility to Plaintiff's false arrest claim for several reasons.

First, the Ontario County Grand Jury testimony of Monroe County Deputy Sheriff Daniel J. Luffman ("Luffman")[22] establishes that Luffman explained Plaintiff's fingerprints

---

[21] Based on Judge Sinatra's Decision and Order filed February 21, 2025 (Dkt. 15), Monaghan was terminated as a Defendant on February 24, 2025.

[22] Based on Judge Sinatra's Decision and Order filed February 21, 2025 (Dkt. 15), Luffman was terminated as a Defendant to this action on February 24, 2025.

were found on the original check # 61517, not on the copy presented to the Grand Jury. Luffman Grand Jury Tr.[23] at 21-22 (Dkt. 1-2 at 93-94). Luffman further testified that as an evidence technician, Luffman is qualified to identify fingerprints and compare the fingerprints to known samples, and that Luffman lifted a fingerprint from check # 61517 that was compared positively to a "fingerprint card" containing Plaintiff's inked fingerprints. *Id*. at 22-23 (Dkt. 1-2 at 94-95). According to Luffman, the fingerprint card was created when Plaintiff was arrested on a previous occasion. *Id*. at 23 (Dkt. 1-2 at 95). Thus, there is no basis for Plaintiff's assertion that Phelan "fabricated" testimony that linked Plaintiff to check # 61517 created by Plaintiff and Sherrell Williams at 119 Weldon Street.

Second, Scott's statement regarding the location at which the forged checks were produced by Plaintiff and Sherrell Williams pertains to Plaintiff's Monroe County charges, not the Ontario County charges. *See* Dkt. 1-3 at 76-77. That Scott's statement is devoid of any mention of check # 61517 is completely irrelevant to the indictment and the Ontario County charges and, thus, is irrelevant to whether probable cause existed for the indictment and the Ontario County charges.

Furthermore, regardless of whether check # 61517 was created by Plaintiff, either at 12 Arnett Drive or at 119 Weldon Street, significantly, the Ontario County charges in the indictment do not include a charge of *creating* a forged instrument but, rather, only three counts of *possessing* a forged instrument and a single count of grand larceny, a lesser included offense to the Second Count pertaining to check # 61517. Putting aside for the moment the First and Third Counts of possession of a forged

---

[23] References to "Luffman Grand Jury Tr." are to the pages of the transcript of Luffman's testimony before the Ontario County Grand Jury, filed as Exhibit D to the original Complaint (Dkt. 1-2 at 92-97).

instrument pertaining to check # 61512 and # 61519 on which Plaintiff was acquitted, as well as the Fourth Count for grand larceny, Plaintiff's two convictions on the Second Count of possession of a forged instrument pertained to check # 61517. "A person is guilty of criminal possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in section 170.10." N.Y. Penal Law § 170.25 (McKinney 1965) ("N.Y. Penal Law § ___"). As relevant, the forged instruments for which possession constitutes criminal possession in the second degree include a forged check under N.Y. Penal Law § 170.10[1]. *See People v. Lloyd*, 987 N.Y.S.2d 672, 676 (3rd Dep't 2014) (forged checks found at the defendant's house supported violations of N.Y. Penal Law §§ 170.10[1] and 170.25). That Plaintiff's fingerprints were found on forged check # 61517, without more, is sufficient evidence to establish probable cause that Plaintiff was in possession of such check. *See People v. McCready*, 588 N.Y.S.2d 686, 687 (4th Dep't 1992) (fingerprint evidence found at the crime scene, without more, established probable cause for the defendant's arrest). Significantly, the arrest is valid "so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 n. 1, 154 (2d Cir. 2006) ("when faced with a claim for false arrest, we focus on the validity of the *arrest,* and not on the validity of each charge") (citing *Devenpeck v. Alford,* 543 U.S. 146 (2004)).

Accordingly, Plaintiff's allegations that Phelan fabricated the evidence presented to the Grand Jury on which the indictment and arrest warrant are predicated, particularly

Plaintiff's assertion of Phelan's fake testimony with regard to the location at which check # 61517 was created, are implausible and it logically follows that Plaintiff's false arrest claim against Defendants Hoffman and Phelan is not plausible. Ontario County Defendants' Motion and Phelan's Motion should be GRANTED as to Plaintiff's false arrest claims.

**3. Malicious Prosecution**

Plaintiff asserts a claim for malicious prosecution against Defendant Phelan. Amended Complaint at 19-20. Defendant Phelan argues in support of dismissal that the allegations on which the malicious prosecution claims is based, *i.e.*, that Phelan fabricated evidence presented to the Grand Jury, are implausible. Phelan's Memorandum at 7-11. In opposition, Plaintiff relies on the same argument asserted in opposing dismissal of his false arrest claim, to wit, that the exhibits on which Plaintiff relies establishes the plausibility of Plaintiff's challenges to the evidence on which the indictment and arrest warrant are based. Plaintiff's Response to Phelan's Motion at 17-27. Phelan did not reply in further support of dismissal.

A claim for malicious prosecution is recognized as asserting a violation of the Fourth Amendment. *Thompson v. Clark*, 596 U.S. 36, 43 (2022) ("[T]he gravamen of the Fourth Amendment claim for malicious prosecution, as this Court has recognized it, if the wrongful initiation of charges without probable cause."). "To prevail on a malicious prosecution claim brought under Section 1983, a plaintiff must establish '(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding, [ ] (4) actual malice,' and '(5) a sufficient

post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" *Carruthers v. Colton*, 153 F.4th 169, 181 (2d Cir. 2025) (quoting *Alexander v. City of Syracuse*, 132 F.4th 129, 158 (2d Cir. 2025) (alterations in *Carruthers*) (internal quotation marks and citations omitted in *Carruthers*)). Further, "a Fourth Amendment claim under § 1983 for malicious prosecution requires the plaintiff to show a favorable termination of the underlying criminal case against him." *Thompson*, 596 U.S. at 39, 44 ("To maintain that Fourth Amendment claim under § 1983, a plaintiff . . . must demonstrate, among other things, that he obtained a *favorable termination* of the underlying criminal prosecution." (citing *Heck*, 512 U.S. at 484, and n. 4 (italics in *Thompson*)).[24] Significantly, "'probable cause is a complete defense to a constitutional claim of malicious prosecution.'" *Carruthers*, 153 F.4th at 181 (quoting *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014)). In contrast to a false arrest claim, "[i]n assessing probable cause for a malicious prosecution claim . . . courts must 'evaluate suits . . . charge by charge.'" *Id*. (quoting *Chiaverini v. City of Napoleon*, 602 U.S. 556, 562 (2024)). "That is, 'probable cause must be shown as to each crime charged in the underlying criminal action.'" *Id*. at 181-82 (quoting *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 1991) ("'[W]here the issue is whether the officers had probable cause to commence proceedings,' we must 'separately analyze the charges claimed to have been maliciously prosecuted.'").

In the instant case, insofar as probable cause supports Plaintiff's arrest, *see* Discussion, *supra*, at 23-27, on the indictment's Second Count charging Plaintiff with

[24] Despite requiring a "favorable termination" of the criminal proceedings in a § 1983 plaintiff's favor, the dismissal need not be accompanied by any affirmative indication that the plaintiff is innocent of the charges such as a statement that the evidence was insufficient to support the charge. *Thompson*, 596 U.S. at 48-49.

criminal possession of a forged instrument based on check # 61517, that same probable cause bars Plaintiff's malicious prosecution claim based on Plaintiff's criminal prosecution on that charge. With regard to the first and third counts charging Plaintiff with criminal possession of a forged instrument in the second degree based on, respectively, check # 61512 and check # 61519, because the first trial, at which Plaintiff was acquitted of the first and third counts, ended on May 1, 2009, the prosecution of Plaintiff on those charges for purposes of a favorable termination under *Heck* also ended on May 1, 2009, at which time the three-year statute of limitations commenced running, expiring on April 30, 2012. Because Plaintiff did not commence this action until June 29, 2022, Plaintiff's malicious prosecution claim is time-barred by more than ten years and thus is subject to dismissal *sua sponte*. *See Cummings v. Giuliani*, 2000 WL 1597868, at * 2 (S.D.N.Y. Oct. 24, 2000) (dismissing as time-barred, *sua sponte*, *pro se* plaintiff's personal injury claims that accrued more than five years prior to the commencement of the action (citing *Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995) (holding that district court's *sua sponte* dismissal of claim filed by a *pro se* plaintiff as time-barred is "especially appropriate where . . . the injuries complained of [by the *pro se* plaintiff] occurred more than five years before the filing of the Complaint")).

As regards the Fourth Count charging Plaintiff with grand larceny in the third degree, "[a] person is guilty of grand larceny in the third degree when such person steals property and: [1] when the value of the property exceeds three thousand dollars . . . ." N.Y. Penal Law § 155.35 (McKinney 1986). Relevantly, check # 61517, the only check for which Plaintiff was twice convicted of criminal possession of a forged instrument in the second degree, in the amount of $ 3,245.55, Dkt. 1-2 at 98 (photocopy

of check # 61517), exceeds the $ 3,000 threshold for the grand larceny charge. *See* N.Y. Penal Law § 155.35. The Fourth Count was dismissed because it was considered a lesser included offense of the Second Count charging Plaintiff with criminal possession of a forge instrument, namely, check # 61517. *See Williams*, 957 N.Y.S.2d at 785 (reversing Plaintiff's first conviction as to County 4 as a lesser included offense relative to Count 2). Further, in his testimony before the Grand Jury, Phelan testified that Scott cashed check # 61517 at the Five State Bank branch in Geneva, Phelan Grand Jury Tr.[25] at 13 (Dkt. 1-2 at 82), which is the same check on which Plaintiff's fingerprint was found. Luffman Grand Jury Tr. at 21-22 (Dkt. 1-2 at 93-94). Accordingly, there was sufficient evidence presented to the Ontario County Grand Jury to find, at a minimum, probable cause supporting the charge of grand larceny in the third degree against Plaintiff who thus fails to state a plausible claim for malicious prosecution on the charge. *See DaMata v. City of New York*, 2023 WL 112449, at * 12 (S.D.N.Y. Jan. 5, 2023) (the probable cause that supported one criminal offense for which the plaintiff was charged and prosecuted also supported the lesser included offense for which the plaintiff was also charged and prosecuted).

Defendant Phelan's Motion should be GRANTED as to the malicious prosecution claim.

**4. Denial of a Fair Trial**

Plaintiff asserts against Defendant Phelan a claim that he was denied a fair trial because Phelan fabricated evidence that was presented to the Ontario County Grand

[25] References to "Phelan Grand Jury Tr." are to the pages of the transcript of Phelan's testimony before the Ontario County Grand Jury, portions of which are filed as Exhibit A to the original Complaint (Dkt. 1-2 at 80-88).

Jury. Amended Complaint at 19-20. Plaintiff's claim that he was denied a fair trial is essentially a restatement of his malicious prosecution claim. *Id*. Defendant Phelan argues in support of dismissal that the allegations on which the denial of a fair trial claim is based, which are the same allegations asserted in support of the malicious prosecution claim, are implausible. Phelan's Memorandum at 7-11. In opposition, Plaintiff relies on the same argument asserted in opposing dismissal of his false arrest and malicious prosecution claims, specifically, that the exhibits on which Plaintiff relies establishes the plausibility of Plaintiff's challenges to the evidence on which the indictment and arrest warrant are based. Plaintiff's Response to Phelan's Motion at 17-27. Phelan did not reply in further support of dismissal.

"To succeed on a fabricated evidence claim, a plaintiff must establish that 'an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result.'" *Carruthers*, 153 F.4th at 189 (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (bracketed material in *Carruthers*)). "'A [Section] 1983 plaintiff may sue for denial of the right to a fair trial based on a police officer's fabrication of information . . . .'" *Id*. (quoting *Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023) (internal quotation marks and citation omitted in *Carruthers*). Nevertheless, a § 1983 claim based on fabrication of evidence requires "'are more than 'bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements.'" *Barnes*, 68 F.4th at 129 (quoting *Iqbal*, 556 U.S. at 681 (bracketed material added and internal quotation marks omitted in *Barnes*). Further, "[t]he fabrication element requires only that the defendant knowingly make a

false statement or omission." *Ashley v. City of New York*, 992 F.3d 128, 143 (2d Cir. 2021). *See also Zahrey v. Coffey*, 221 F.3d 342, 353-54 (2d Cir. 2000) (recognizing denial of a fair trial claim based on presentation of allegedly fabricated evidence to the grand jury).

In his Amended Complaint, Plaintiff's allegations in support of his false evidence claim are the same asserted in support of his malicious prosecution and false arrest claims, specifically, that Phalen falsely testified before the Grand Jury both that Plaintiff's fingerprints were found on check # 61517, and that the forensic evidence derived from the seized hard drives show check # 61517 was created at 119 Weldon Street rather than at 12 Arnett Drive. As discussed in connection with Plaintiff's false arrest claim, Discussion, *supra*, at 23-27, however, Luffman testified before the Grand Jury that Plaintiff's fingerprint was lifted from the original of check # 61517, whereas what was being presented to the Grand Jury was a *copy* of check # 61517. Luffman Grand Jury Tr. at 21-22 (Dkt. 1-2 at 93-94. Again, a fingerprint on an item of evidence is sufficient to establish probable cause for possession. *See McCready*, 588 N.Y.S.2d at 687 (fingerprint evidence found at the crime scene, without more, established probable cause for the defendant's arrest). Moreover, Luffman also testified that in his expert opinion, Plaintiff's fingerprint on check # 61517 matched Plaintiff's fingerprints maintained in police records. Luffman Grand Jury Tr. at 23 (Dkt. 1-2 at 95). As regards Plaintiff's argument that Phelan falsely testified before the Grand Jury that evidence obtained from the seized hard drives show check # 61517 was created at 12 Arnett Drive, rather than at 119 Weldon Street, the location of the computer on which check # 61517 was forged is irrelevant to the criminal charges against Plaintiff alleged in the

Second Count including possession of a forged instrument and grand larceny alleged in the Fourth Count. *See* Discussion, *supra*, at 25-27.

Plaintiff thus has failed to plausibly allege a claim for denial of a fair trial based on fabricated evidence. Defendant Phelan's Motion should be GRANTED as to Plaintiff's denial of a fair trial based on fabrication of evidence claim.

**5. Failure to Intervene**

Plaintiff asserts a claim for failure to intervene against Defendant Peters with regard to the alleged false arrest, malicious prosecution, and denial of fair trial claims, Amended Complaint at 14 and 22, and against Defendant Shaffer on the malicious prosecution claims. Amended Complaint at 23-24. In support of dismissal, both Defendants Peters and Shaffer argue that the dismissal of the primary claims for false arrest, malicious prosecution, and denial of a fair trial claims also requires dismissal of the associated failure to intervene claims. Peters's Memorandum at 13; Ontario County Defendants' Memorandum at 13. Peters further argues that he is qualifiedly immune from liability on the failure to intervene claims. Peters's Memorandum at 12-15. In opposition to dismissal, Plaintiff argues that the claim that Defendants Peters and Shaffer failed to intervene in Plaintiff's false arrest cannot be dismissed because the timeliness of Plaintiff's false arrest claim is dependent on issues of fact that cannot be resolved at the pleadings stage of the action, specifically, whether the Grand Jury indictment on which the warrant for Plaintiff's arrest issued was based on fabricated evidence presented to the Grand Jury which would negate any probable cause for Plaintiff's arrest. Plaintiff's Response to Peters's Motion at 5-15; Plaintiff's Response to Ontario County Defendants' Motion at 12-23. In further support of dismissal, Defendant

Peters argues Plaintiff's attempt to link the failure to intervene claim to the alleged fabrication of evidence by Phelan only "muddies the waters" and does not respond to Peters's arguments in support of dismissal of the claim, Peters's Reply at 3-7, and other than conclusory statements, Plaintiff does not address Peters's assertion of qualified immunity. *Id*. at 7. Defendant Shaffer reiterates his earlier arguments in support of dismissal that the underlying false arrest claim is time-barred and made upon an arrest warrant issued pursuant to an indictment returned by a Grand Jury such that there is no underlying constitutional violation that supports Plaintiff's failure to intervene claim. Ontario County Defendants' Reply at 5.

Plaintiff's failure to intervene claims are asserted pursuant to the Fourth Amendment (false arrest), Sixth and Fourteenth Amendments (denial of a fair trial based on fabricated evidence), and Fourteenth Amendment (malicious prosecution). Relevantly,

> all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used; (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official. In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring.

*Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted). *See also Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 129 (2d Cir. 1997) (a law enforcement officer "has an affirmative duty to intercede on behalf of a citizen whose constitutional rights are being violated in the presence of other officers," and a failure to do so may be grounds for section 1983 liability). "'A failure to intervene claim is

contingent upon the disposition of the primary claims underlying the failure to intervene claim. . . .'" *Myers v. City of New York*, 2015 WL 13881601, at * 10 n. 10 (S.D.N.Y. 2015) (quoting *Matthews v. City of New York*, 889 F.Supp.2d 418, 443-44 (E.D.N.Y. 2012) (citing *Coleman v. City of New York*, 2010 WL 571986, at *5 (S.D.N.Y. Feb. 2, 2010))).

Further, insofar as Peters argues he is qualifiedly immune from liability on any of Plaintiff's failure to intervene claims, Peters's Memorandum at 12-15, because the undersigned recommends dismissal of the failure to intervene claims based on Plaintiff's failure to plausibly allege any underlying constitutional violation, Peters's qualified immunity argument is irrelevant and is not addressed.

Accordingly, with the dismissal of all the Plaintiff's primary claims, including for false arrest, malicious prosecution, and denial of a fair trial, the associated failure to intervene claims against Defendants Peters and Shaffer must also be dismissed. *Myers*, 2015 WL 13881601, at * 10 n. 10. Defendant Peters's Motion and Ontario County Defendants' Motion therefore should be GRANTED as to Plaintiff's failure to intervene claims.

**7. Official Capacity Claims**

Plaintiff asserts that each Defendant is sued in his official capacity. Amended Complaint at 3, 4, 5. Ontario County Defendants argue that the official capacity claims should be dismissed because Plaintiff has not alleged that the asserted unlawful conduct was undertaken pursuant to any municipal policy or custom as required by *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978) ("*Monell*"), Ontario County Defendants' Memorandum at 11-13, and pursuant to Fed.R.Civ.P.

12(b)(5) ("Rule 12(b)(5)"), for insufficient service of process. *Id*. at 18. Defendant Peters argues that Plaintiff's claims against Peters in his official capacity are inextricably tied to Plaintiff's claims against Phelan which fail because claims against officials sued in their official capacities require allegations that the challenged actions were undertaken pursuant to a municipal policy or custom which allegations are absent here. Peters's Memorandum at 14.[26] In opposition to dismissal, Plaintiff asserts he anticipates serving a further amended complaint that complies with *Monell*, Plaintiff's Response to Ontario Defendants' Motion at 11; Plaintiff's Response to Peters's Motion at 29. In further support of dismissal of Plaintiff's official capacity claims, Ontario County Defendants argue that Plaintiff has not filed any motion to amend and, further, any such motion would necessarily be denied as futile because the underlying claims for false arrest asserted against Hoffman and failure to intervene in the malicious prosecution claim asserted against Shaffer are implausible and time-barred. Ontario County Defendants' Reply at 4. Peters similarly argues in further support of dismissal that a further amended complaint to comply with *Monell* would be futile because the underlying claims asserted in the Amended Complaint against Peters for failing to intervene in the false arrest, malicious prosecution, and denial of a fair trial claims are implausible with Plaintiff false arrest claim also time-barred. Peters's Reply at 9.

It is settled that a claim against municipal employees in their official capacities are essentially claims against the municipality. *Ortiz v. Wagstaff*, 523 F. Supp.3d 347, 361 (W.D.N.Y. 2021) ("Section 1983 claims against municipal employees sued in their official capacity are treated as claims against the municipality itself."). A claim for

[26] Defendant Phelan does not challenge Plaintiff's claims insofar as they are alleged against Phelan in his official capacity.

municipal liability, however, requires the plaintiff allege the denial of a constitutional right attributed to an official policy or custom. *Zahara v. Town of Southold*, 48 F.3d 674, 695 (2d Cir. 1995). In the instant case, as Defendants argue, no such official policy or custom is alleged. Moreover, even if Plaintiff had alleged the asserted constitutional violations were caused by Defendants' conduct undertaken pursuant to an official policy or custom, because, as Discussed, *supra*, no such constitutional violation is plausibly alleged, Plaintiff's allegation that Defendants' conduct was pursuant to an official policy or custom would still fall short of alleging a constitutional violation.

As regards Ontario County Defendants' argument that Rule 12(b)(5) requires dismissal of the Amended Complaint against Ontario County Defendants insofar as they are sued in their official capacity for improper service, Ontario County Defendants' Memorandum at 18, "[b]efore a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (quoting *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987)). Accordingly, "to survive a motion to dismiss based on lack of personal jurisdiction and insufficient service of process, the plaintiff must demonstrate that [he] adequately served the defendants." *Buon v. Spindler*, 65 F.4th 64, 73 (2d Cir. 2023) (citing *Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010)).

Because claims against municipal employees in their official capacity are claims against the municipality, *see Accarino v. Town of Monroe*, 857 Fed.Appx. 49, 50 (2d Cir. 2021) ("'[A] § 1983 suit against a municipal officer in his official capacity is treated as an action against the municipality itself'" (quoting *Coon v. Town of Springfield*, 404 F.3d

683, 687 (2d Cir. 2005))), service of process of such claims must be made pursuant to Fed.R.Civ.P. 4(j) ("Rule 4(j)") which applies to service of process on, *inter alia*, a state or local government. Relevantly, Rule 4(j) provides that a county

> must be served by:
> (A) delivering a copy of the summons and of the complaint to its chief executive officer; or
> (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

Fed. R. Civ. P. 4(j).

In New York, personal service upon a county is "to the chair or clerk of the board of supervisors, clerk, attorney or treasurer." New York Civ. Prac. Law and Rules § 311(a)[4] ("§ 311(a)[4]"). In the instant case, Plaintiff directed the U.S. Marshal to serve Ontario County Defendants by delivery of the Summons to the Ontario County Sheriff's Department, Dkt. 25 at 4 (Shaffer) and 7 (Hoffman). Because the Ontario County Sheriff's Department is not included under New York law among the entities upon whom service on a county may be made, Plaintiff's service of process was insufficient requiring dismissal of the Amended Complaint. *See Buon*, 65 F.4th at 75 (affirming district court's dismissal of complaint for insufficient service of process).

Accordingly, Ontario County Defendants' and Peters's Motions should be GRANTED with regard to the official capacity claims both under Rule 12(b)(6) for failure to state a claim consistent with *Monell* liability and under Rule 12(b)(5) for insufficient service of process.

**8. Plaintiff's Motion and Plaintiff's Sur-Replies**

In Plaintiff's Motion (Dkt. 50), Plaintiff seeks an order revising various filing deadlines as unnecessary given all anticipated papers from both Plaintiff and

Defendants had passed. Because Plaintiff has been given an opportunity to respond, and did in fact file responses to each of Defendants' Motions seeking dismissal of the Amended Complaint, and in the absence of any motion by Defendants to strike such filings, Plaintiff's Motion is DISMISSED as moot.

Plaintiff filed Plaintiff's First Sur-Reply (Dkt. 52), and Plaintiff's Second Sur-Reply (Dkt. 55) (together, "Plaintiff's sur-replies") without leave of court. By letters to the undersigned, Ontario County Defendants (Dkt. 53), and Defendant Peters (Dkts. 54 and 56), oppose Plaintiff's sur-replies because they were filed without leave of court, but did not actually move to have such sur-replies stricken.

Upon review, Plaintiff's sur-replies do not contain any arguments that would cause the undersigned to alter his recommendations herein. Nevertheless, the sur-replies were not taken into consideration in this Report and Recommendation.

**9. Dismissal with Prejudice**

Although dismissal of a *pro se* plaintiff's claims for failure to state a claim is generally without prejudice and with leave to replead, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Nor is a denial of leave to amend abusive where the papers filed in opposition to dismissal provide "no clue as to how the complaint's deficiencies would be cured." *Noto v. 22nd Century Group, Inc.*, 35 F.4th 95, 107 (2d Cir. 2022).

Here, the problems with Plaintiff's claims, as pleaded, are substantive such that further pleading cannot cure them and would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (affirming dismissal of *pro se* plaintiff's claim for failure to state a

claim with prejudice and without leave to replead where even liberal reading of complaint failed to suggest plaintiff had merely inadequately or inartfully pleaded and plaintiff, speaking through counsel on appeal, suggested no new material that could be pleaded to sufficiently reframe claim, such that repleading would be futile). In particular, Plaintiff's claims for false arrest asserted against Defendants Hoffman and Phelan, and for malicious prosecution asserted against Phelan, are either implausible because Plaintiff's papers establish both Plaintiff's arrest and prosecution on the Second and Fourth Counts of the indictment were based on probable cause and because Plaintiff's false arrest claim and malicious prosecution claim based on the First and Third Counts of the indictment are time-barred. Plaintiff's denial of a fair trial claim asserted against Defendant Phelan is implausible because it is refuted by the facts asserted by Plaintiff in support of such claim. Plaintiff's claims for failure to intervene claims asserted against Defendant Peters with regard to the alleged false arrest and denial of a fair trial claims, and against Defendants Peters and Shaffer with regard to the malicious prosecution claim, fail with the dismissal of the primary claims as either time-barred or factually implausible. Thus, the court find none of Plaintiff's claims can be repleaded to avoid such fundamental deficiencies. Further, Plaintiff's papers filed in opposition fail to provide any clue as to how the deficiencies of such claims might be cured. *Noto*, 35 F.4th at 107.

Accordingly, the dismissal of Plaintiff's claims should be with prejudice and without leave to replead.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 50) is DISMISSED as moot; Ontario County Defendants' Motion (Dkt. 23) should be GRANTED; Defendant Peters's Motion (Dkt. 28) should be GRANTED; Defendant Phelan's Motion (Dkt. 40) should be GRANTED. The Amended Complaint should be DISMISSED with prejudice and the Clerk of Court should be directed to close the file.

SO ORDERED, as to Plaintiff's
Motion.

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Respectfully submitted, as to Defendants'
Motions,

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: April 2, 2026
Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the Plaintiff and to the attorneys for the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: April 2, 2026
Buffalo, New York